UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
======================================================
N.C. a child with a disability,
Individually and by her parent
And next friend, L.S.,

                        Plaintiffs,

    v.                                        5:07cv01230 NPM/ATB

ONEIDA CITY SCHOOL DISTRICT,
                        Defendant.
_____
APPEARANCES

| | |
|---|---|
| Office of Andrew K. Cuddy<br>Attorney for plaintiffs<br>5888 Main Street<br>Williamsville, NY   14221 | Jason H. Sterne, Esq. |
| Ferrara, Fiorenza, Larrison, Barrett & Reitz, P.C.<br>Attorney for defendant<br>5010 Campuswood Drive<br>East Syracuse, NY   13057 | Susan T. Johns, Esq. |

NEAL P. McCURN, Senior U.S. District Court Judge

MEMORANDUM - DECISION AND ORDER

      This is an action brought by N.C., a child with a disability, individually and by her parent and next friend, L.S. ("plaintiffs"), pursuant to the Individuals with Disabilities Education Act ("IDEA" or "the Act"). Specifically, plaintiffs seek to recover attorneys' fees from defendant Oneida City School District ("defendant"), pursuant to the provision of the IDEA for the award of attorneys' fees to

prevailing parties, codified at 20 U.S.C. §1415(i)(3)(B).  Currently before the court are cross-motions for summary judgment by the parties.  For the reasons set forth below, defendant's motion for summary judgment is denied.  Plaintiffs' summary judgment motion for attorneys' fees pursuant to the IDEA is granted.

## I.    FACTS AND PROCEDURAL HISTORY

The following uncontested facts are taken from the plaintiffs' complaint and from the parties' motions, as well as from affidavits and exhibits attached to same. N.C. was born in 1996 and was classified by defendant's committee on special education ("CSE") as having a learning disability.  N.C. attended the Oneida School District's Seneca Street Elementary School.  By letter dated June 29, 2006, N.C.'s next friend, L.S., requested a due process hearing pursuant to 20 U.S.C. § 1415(f)(1),[1] demanding, inter alia, a finding that defendant did not provide N.C. a free appropriate public education ("FAPE") as required by the IDEA.  L.S. sought, among other things, placement of N.C. in a smaller, more appropriate classroom setting with children of similar needs and abilities, and to have N.C. provided with an appropriate individualized education program ("IEP") including specialized

---

[1] "Whenever a complaint has been received under subsection (b)(6) or (k), the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1)(A) (West 2010).

reading and math instruction, an assistive technology evaluation, an FM auditory trainer,[2] an appropriate occupational therapy program, and additional corrective services to compensate for past deprivations.  Plaintiffs also requested an assurance that defendant would comply with the state's regulatory requirements in the future, including provision of prior written notice, and requested payment of attorneys' fees and expenses.

Defendant appointed Robert Briglio as impartial hearing officer ("IHO").  Prior to the meeting, the parties met for settlement purposes, and in a July 24, 2006 letter to the parent, defendant stated that the district was willing to provide forty minutes of resource room instruction, forty minutes of direct consultant teacher services in math, special education counseling, and also agreed to conduct a 30-day trial of the auditory trainer.  The settlement was not accepted, partially due to the defendant's resistance to including attorneys' fees in the settlement offer.

On September 15, 2006, the parties executed a consent decree, which was "so ordered" by the IHO, thus settling the case.  Specifically, the consent decree

---

[2]  An FM trainer, sometimes called an FM auditory trainer, is a device that allows students to focus on a teacher's voice and eliminate distractions caused by background noise.  The trainer is "for use in the classroom and/or at home. The benefit is that the background room noise is not amplified, and the parent or teacher's voice goes directly to the child's ear from any location, even from another nearby room." http://www.hearinglosshelp.com/glossary.htm.  (last visited October 6, 2010).

called for a CSE meeting to review an inclusive placement at the Durhamville School, review of two evaluations, an FM trainer for a trial period, and a CSE meeting after that trial period to discuss its effectiveness. The consent decree also provided an evaluation in occupational therapy, and forty hours of corrective instruction.

After the consent order was signed, efforts by the plaintiffs to collect attorneys' fees and costs pursuant to the Act were unsuccessful. Arguing that they prevailed in the underlying proceedings, plaintiffs brought the current action to demand reasonable attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3). Defendant argues, inter alia, that the complaint fails to state a claim upon which relief can be granted and that the consent decree did not provide N.C. with any substantive educational benefits that she would not otherwise have received. Doc. No. 4. Despite efforts by the magistrate judge to encourage the parties to settle, with ample time afforded by the magistrate for them to do so (Doc. No. 10-3), defendant made no good faith effort to settle this matter. In fact, on May 30, 2008, defendant's counsel stated that her client was "adamant that they don't want to settle this." Doc. No. 10-4, p. 20. At that time, the amount requested for attorneys' fees was approximately $5155.00. Doc. No. 10-4, p. 4. Defendant never made a settlement offer. Doc. No. 10-3, p. 4.

Currently before the court is plaintiff's First Motion for Attorneys' Fees (Doc. No. 10) which the court construes as a motion for summary judgment, and defendant's cross motion for summary judgment (Doc. No. 11). For the sake of judicial efficiency, the court will initially consider defendant's motion.

## II. DISCUSSION

### A. The IDEA and Attorneys' Fees

"The IDEA is designed to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." B.W. ex rel. K.S. v. New York City Dept. of Educ., --- F.Supp.2d ----, 2010 WL 2220492 at *5 (S.D.N.Y. 2010) (citing 20 U.S.C. § 1400(d)(1)(A); Schaffer v. Weast, 546 U.S. 49, 51, 126 S.Ct. 528 (2005); A.R. ex rel. R.V. v. N.Y. City Dep't of Educ., 407 F.3d 65, 72 (2d Cir.2005). "The IDEA requires that, as a condition to receiving federal funds, a school district ensure that a disabled child receives a free and appropriate public education ("FAPE") through an Individual Education Plan ("IEP"), which "must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide." B.W. ex rel. K.S. v. New York City Dept. of Educ., 2010 WL 2220492 at *5 (internal citations

omitted).

"The IDEA ... contains a fee-shifting provision under which a 'prevailing party' may recover attorneys' fees from the party against which it prevailed. See 20 U.S.C. § 1415(i)(3)(B). The first question we must address, then, is whether the Parents were "prevailing parties" in the proceedings before the IHOs." A.R. v. New York City Department of Education, 407 F.3d at 73.

    1.    Prevailing party

In pertinent part, 20 U.S.C. § 1415(i)(3)(B) states that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs -- (I) to a prevailing party who is the parent of a child with a disability ...." 20 U.S.C. § (i)(3)(B)(i)(I). "A party attains 'prevailing party' status if that party attains success on any significant issue in the litigation that achieves some of the benefit sought in bringing the litigation, and the manner of the resolution of the dispute constitutes a change in the legal relationship of the parties." B.W. ex rel K.S. v New York City Dept. of Educ., 2010 WL 2220492 at * 6.

    2.    Reasonable Attorney Fees

The statute also states in pertinent part that "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action

or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection." 20 U.S.C. § 1415 (i)(3)(C). "Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if -- ... the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415 (i)(3)(D)(III) (West 2010).

    B.    Legal Standard for Summary Judgment

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82 (2d Cir. 2004). "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought[.]" See Security Ins., 391 F.3d at 83, citing

Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), citing Anderson, 477 U.S. at 250-51.

While the initial burden of demonstrating the absence of a genuine issue of material fact falls upon the moving party, once that burden is met, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," see Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002), (citing Fed. R. Civ. P. 56(c)), by a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial, see Peck v. Public Serv. Mut. Ins. Co., 326 F.3d 330, 337 (2d Cir. 2003), cert. denied, 124 S.Ct. 540 (2003).

    C.    Defendant's Motion

Defendant comes before the court arguing initially that plaintiffs' motion should be denied for failure to comply with Local Rule 7.3 (sic), i.e., for failure to contain a statement of material facts. The court infers defendant's intent to cite Local Rule 7.1 (a)(3) which states that "[a]ny motion for summary judgment shall contain a Statement of Material Facts ... Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the

motion." See N.D.N.Y. L.R. 7.1(a)(3). In B.R. v. Lake Placid Central School District, 2009 WL 667453 (N.D.N.Y. 2009), the court addressed that very issue, denying defendant's request "because the statement of material facts will not aid the court in its independent review of the record in deciding whether plaintiffs are the prevailing party and, if so, whether they are entitled to attorneys['] fees." Id. at * 2 (citations omitted). Adopting this reasoning, the court will not deny plaintiffs' motion on this basis.

Defendant next argues that the plaintiffs did not prevail, and that the consent decree lacks the administrative imprimatur necessary to deem the parent the prevailing party. Doc. No. 11-5 at p 7. Citing Buckhannon Board & Care Home v. West Virginia Department of Health & Human Resources, 532 U.S. 598, 605 (2001) for the premise that in order to be found a prevailing party, there must be a judicially sanctioned change in the legal relationship of the parties that bears the necessary judicial imprimatur, defendant argues that the consent degree lacks sufficient administrative imprimatur.  Defendant argues that the district did not provide any service as a result of the consent decree, and in fact the consent decree resulted in nothing more than the district agreeing to what it had already determined to provide, along with a CSE meeting, which by law it was required to conduct to simply consider various items. Doc. No. 11-5 at p. 10. Based on the

9

following facts, the court finds the defendant's argument unavailing.

On June 7, 2006, N.C. was evaluated by licensed psychologist Dr. Sandra DeMyer-Gapin ("DeMyer-Gapin") at L.S.'s request. DeMyer-Gapin administered a battery of tests which revealed that N.C. was years behind in reading rate, accuracy, fluency, and comprehension. Her math ability was severely delayed, and she had various executive functioning problems. DeMyer-Gapin recommended that the district should consider a more self-contained classroom for N.C., given her difficulties, her age, and her relatively limited progress. DeMyer-Gapin also opined that since N.C. presented with many weaknesses and a very scattered profile, a more individualized program might be more appropriate. DeMyer-Gapin also strongly recommended counseling for N.C. to provide some insight into her behavioral problems.

L.S. provided the district with DeMyer-Gapin's report on June 10, 2006, and a meeting was held at L.S.'s request on June 19, 2006 for discussion of same. The report was circulated among the participants, which included the school principal, N.C.'s resource room teacher, N.C.'s regular education teacher, and L.S. Refusing to implement any of the recommendations in the report, the school principal told L.S. that N.C. would continue to be in the regular education classroom in September of 2006, and her current IEP reflected that placement.

Defendant also failed to provide N.C. with an FM Trainer that was recommended by Doctor of Audiology Cheryl A. Longwell in February of 2006 (at least on a thirty day trial basis), to help accommodate N.C. in the classroom and to help her learn more efficiently.

    L.S. retained counsel shortly thereafter.  In his June 29, 2006 letter to the Oneida City School District Board of Education requesting an impartial hearing pursuant to the relevant IDEA statutes, counsel for plaintiffs pointed out defendant's failure to accommodate L.S.'s requests set forth above and also asserted that despite evaluations completed by district personnel that N.C. was in need of occupational therapy services, none were provided.  Finally, plaintiffs' counsel argued that the CSE did not provide L.S. with proper written notice following the October 6, 2005 CSE meeting that included the options the CSE considered and the reason they were rejected.

    Plaintiffs requested the following remedies for N.C.:

> Placing [N.C. in] a smaller, more appropriate classroom setting with children of similar individual needs.  The use of a consultant teacher would also be considered a possible remedy as this may afford [N.C.] the individual attention she requires.
>
> Providing her with an appropriate IEP that includes specialized reading and math instruction with appropriate methodologies.

> Assuring [L.S.] that in future years, the CSE will develop and provide [N.C.] with appropriate IEPs in a timely fashion, and that extended school year services will be considered at appropriate times.
>
> Providing [N.C.] with an FM Trainer and an appropriate assistive technology evaluation.
>
> Providing [N.C.] with an appropriate occupational therapy program.
>
> Providing [N.C.] with corrective services to remedy the district's failure to provide an appropriate program in the past.
>
> Assuring [L.S.] that the district will comply with New York State regulatory requirements governing Special Education due process procedures, and that the parent will be provided with proper notice in the future.
>
> Payment of attorney fees and expenses. Because [L.S.] is relying on the availability of attorney fees under the law, this is a significant issue to any possible resolution, as [L.S.] would not have been able to engage counsel otherwise.

Doc. No. 10-2, pp. 2-4.

Defendant asserts that it made the following written offer of settlement which it memorialized in the July 24, 2006 letter to the parent, provided here in pertinent part: "As we discussed, we remain willing to provide the following: Forty (40) minutes of resource room instruction[,]  Forty (40) minutes of  direct consultant teacher services in math[,] Special education counseling[, and]

Agreement to conduct a 30-day trial of the auditory trainer." The letter also stated that "[w]e thought we had reached agreement regarding changes to [N.C.'s] program, but were disappointed that your attorney obstructed resolution through his insistence that the district agree to pay his attorney fees as part of the resolution process." Doc. No. 11-1, Exh. 2-A.

The Consent Decree that was eventually signed by the IHO memorialized the following:

> The parties agree:
>
> 1. The District will convene a CSE meeting within 15 days of the execution of this agreement. The CSU, including the Durhamville special education team, will meet to review placement of the Student in the "inclusive" program located at that school.
>
> 2. At the herein referenced CSE meeting, evaluations completed by Dr. Sandra DeMyer-Gapin and Dr. Cheryl Longwell will be circulated and considered. Appropriate recommendations will be made after consideration of these reports.
>
> 3. The District will provide the Student with an FM trainer for 30 days for use on a trial basis. Following the 30 day trial period, the CSE will convene to discuss its effectiveness, and any concern related to its use.
>
> 4. The District will conduct an Occupational Therapy evaluation, and, upon receipt of its results, the CSE will consider whether occupational therapy is an appropriate related service for the Student.

> 5. The District will provide the Student with 40 hours of corrective instruction in the form of Academic Intervention Services over the next five months.
>
> 6. Upon execution of this settlement agreement, the Parent's [sic] agree to withdraw their hearing request dated June 29, 2006 without prejudice.  The parent retains the right to challenge the recommendation of the CSE referenced herein through a due process hearing request should the parent disagree with that recommendation.
>
> 7. This agreement shall be entered into the record by Impartial Hearing Officer Robert Briglio as a consent decree.

Doc. No. 10-2, pp. 8-9.

The threshold issue to resolve is whether plaintiffs were the prevailing party under the relevant statutes.  The court finds that the plaintiffs did in fact prevail.  The defendant initially denied L.S.'s requests made on N.C.'s behalf, and the written offer of settlement was only made after L.S. requested, through her attorney, an impartial hearing.  The court also finds that the consent decree provided more relief to N.C. than defendant's offer of settlement.  The court finds that plaintiffs are the prevailing party pursuant to the guidelines set forth under the IDEA.  Accordingly, defendant's motion for summary judgment is denied.

In considering plaintiffs' motion for attorneys' fees, the court notes that it has been posited that "[h]earing officers do not ordinarily enter orders termed

'consent decrees' in special education cases." Mark C. Weber, [3] Settling Individuals With Disabilities Education Act Cases: Making Up Is Hard To Do, 43 LYLALR 641 (2010). However, from the facts of this case and others in this district that have been reported before and since the instant action, the Cuddy law firm is known for requiring consent decrees,[4] and the courts have found that, pursuant to A.R. v. New York City Department of Education, 407 F.3d at 77, "parents are entitled to 'prevailing party' status if they obtain the administrative analog of a consent decree from an IHO, even where the terms of such orders arise out of an agreement between the parties, rather than out of the wisdom of the IHO." V.G. v. Auburn Enlarged Central School District, 349 Fed.Appx. 582 (2d Cir. 2009). The court finds that there are no genuine issues of material fact on the issue of attorneys' fees and plaintiffs are entitled to attorneys' fees in the submitted amount of $12,305.00. The court finds these fees reasonable pursuant to case law in this district. See, e.g., J.S. by D.S. v. Crown Point Central School District, 2007 WL 475418 (N.D.N.Y. 2007) (awarding an hourly rate of $210 for the work of Cuddy and Sterne, $80 for the work of paralegal Zambotti); V.G. v.

---

[3] Vincent dePaul Professor of Law, DePaul University.

[4] See, e.g., V.G. v. Auburn Enlarged Central School District, 2008 WL 5191703 (N.D.N.Y. 2008) (affirmed, 349 Fed.Appx. 582, 2009); B.R. v. Lake Placid Central School District, 2009 WL 667453 (N.D.N.Y. 2009).

Auburn Enlarged Central School District, 2008 WL 5191703 (N.D.N.Y. 2008) (awarding an hourly rate of $210 for the work of Cuddy and Sterne, $80 for the work of Ms. Zambotti); B.R. v Lake Placid Central School District, 2009 WL 667453 (N.D.N.Y. 2009) (awarding an hourly rate of $235 for the work of Cuddy and Sterne, $80 for the work of Ms. Zambotti). In the case at bar, plaintiffs are requesting an hourly rate of $250 per hour for experienced attorneys Cuddy (8.7 hours) and Sterne (22.4 hours), $150 an hour for attorney Costello (27.2 hours) based on his experience at the relevant time period, and $90 per hour for paralegal Zambotti (5 hours),[5] for a total of $12,305.00. The court finds these rates to be reasonable for attorneys in this district, based on rates prevailing in the community. Plaintiffs are also entitled to fees and costs in connection with the instant motions. The court presumes that the amount submitted by plaintiffs for $727.42 is a true and accurate accounting of the fees and costs incurred from filing and litigating this action, and finds the amount for attorneys' fees and costs to be reasonable where, based on the documentation before it, the court finds that defendant refused to negotiate or discuss payment for plaintiff counsel's services, necessitating litigation to recover attorneys' fees and costs provided for under the IDEA. In sum, the court awards plaintiffs a total of $ 13,032.42 for

---

[5] Curricula Vitae of the attorneys and paralegal are set forth in Doc. No. 10-7.

attorney/paralegal fees costs in the instant action.

In drafting this opinion, the court noted that, in violation of Local Rule 8.1 of this court, both plaintiffs' and defendant's counsels named the minor child in their supporting papers. Despite the conscientious efforts of counsel for plaintiffs in redacting most of Exhibit A to the Cuddy Affidavit, minor N.C.'s name was not redacted. Doc. No. 10-2. Likewise, defendant named the minor child in Exhibit One to Doc. No. 11-3, the affidavit in opposition to plaintiffs' motion. The court, sua sponte, directs the Clerk to seal the offending documents to shield them from public view.

### III. CONCLUSION

For the reasons set forth supra, plaintiffs motion for summary judgment on the issue of attorneys' fees for a prevailing party under the IDEA is hereby GRANTED. Defendant's cross motion for summary judgment is hereby DENIED. The Clerk is directed to seal the documents set forth supra, to enter judgment in favor of the plaintiffs in the amount of $ 13,032.42, and to close this case.

SO ORDERED.

October 8, 2010

_____
Neal P. McCurn
Senior U.S. District Judge